UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAND WHEATLAND,<br><br>                    Plaintiff,<br><br>        v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>                    Defendant. | Civil Action No. 21-3126 (CJN) |

**DEFENDANT'S SUPPLEMENTAL BRIEFING
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, by and through undersigned counsel, hereby submits supplemental briefing on the issue of whether—in light of *Georgia v. United States Dep't of Just.*, No. 1:21-CV-03138 (TNM), 2023 WL 2116375 (D.D.C. Feb. 20, 2023)—the consultant corollary doctrine applies to records shared between the National Institutes of Health ("NIH"), a component of the Department of Health and Human Services ("HHS") and the NIH COVID-19 Treatment Guidelines Panel. Defendant maintains that it does.

In *Georgia v. U.S. DOJ*, the Court rejected the Department of Justice's argument that the consultant corollary doctrine applied to its communications with non-agency, private party, co-litigants in a consolidated lawsuit challenging Georgia's 2021 Election Integrity Act. The Court found that DOJ failed to meet its burden to show: (1) that the private parties were sufficiently disinterested to be analogous to government consultants; (2) that DOJ was the party that solicited the communications; and (3) that the private parties were a discrete group of experts solicited for expertise outside the Department's "ken." *Georgia v. U.S. DOJ.*, 2023 WL 2116375, at *5. The

Court's holding in *Georgia v. U.S. DOJ* is readily distinguishable from the circumstances of the instant case, and therefore should not weigh against Defendant here.

## ARGUMENT

In determining whether a private party comes under the consultant corollary doctrine, the overarching question post-*Georgia v. U.S. DOJ* is whether "a purported consultant [is] enough like the agency's own personnel to justify calling their communications intra-agency." *Georgia v. United States Dep't of Just.*, 2023 WL 2116375, at *5. In *Georgia v. U.S. DOJ*, the answer was no. Here, the answer is yes: the NIH COVID-19 Treatment Guidelines Panel, fits squarely within the consultant corollary exception. As the Court explained in *Georgia v. U.S. DOJ*, three principles guide the inquiry of whether the consultant corollary doctrine applies: (1) "whether the agency presented evidence that the private parties are sufficiently disinterested; (2) whether the agency solicited the communications; and (3) whether the agency solicited the purported consultant for its expertise. *Id.* at *5. Here, all of these principles cut in favor of NIH/ HHS and its communications with the Panel.

First, the Panel is a neutral party, and is sufficiently disinterested in its communications with NIH/ HHS. The Panel consists of experienced public health experts from federal agencies, health care and academic organizations, and professional societies. *See* Def. Ex. 1, Declaration of Gorka Garcia-Malene ("Garcia-Malene Decl."), ¶ 5. All nongovernment Panel members were solicited by the agency and serve as volunteers, receiving no compensation for their participation. Government employees who serve on the panel do so as part of their official duties. *Id.* at ¶ 9. Each member is required to submit financial disclosures that are reviewed by Panel co-chairs biannually to determine suitability for membership, and to ensure that Panel members are sufficiently disinterested and do not have a personal stake. *Id.* at ¶ 10. While the panel members come from a

diaspora of federal agencies, health care and academic organizations, and professional societies, their sole interest is providing NIH/HHS with current scientific and medical advice in the form of guidelines for effectively combatting COVID-19. *Id.* at ¶ 15.

In formulating the Guidelines, the Panel communicates its recommendations to NIH in service of the interests of NIH, not its own. Guidelines are developed by working groups on the Panel, calling upon scientific expertise and the systematic and comprehensive review of relevant scientific research, data, and literature. *See* Garcia-Malene Decl., ¶ 11. The Guidelines go through an extensive vetting process before they are adopted, to ensure the public receives the best possible advice concerning the optimal management and treatment of COVID-19. *Id.* Once the Panel adopts an update to the Guidelines, NIH incorporates that update into the Guidelines and publishes it on the Guidelines website. *Id.* None of this is done in the interest of the Panel or any of its individual members. Rather, it is done in the sole interest of providing NIH/ HHS with guidelines for safely and effectively combatting COVID-19.

Second, unlike in *Georgia v. U.S. DOJ*, it was clearly the government in this instance that solicited the communications from the outside party, here, the Panel, rather than the other way around. Indeed, the Panel exists solely at the behest of the government and for the sole purpose of providing Covid-19 treatment recommendations. In March 2020, the Secretary of HHS asked NIH to develop evidence-based guidelines for the treatment of patients with COVID-19. *See* Garcia-Malene Decl., ¶ 3. Consequently, NIH, through its National Institute of Allergy and Infectious Diseases ("NIAID"), initiated the formation of the NIH COVID-19 Treatment Guidelines Panel, using a previously existing infrastructure that had grown out of the HIV epidemic. *Id.* at ¶ 4. NIH solicited experienced public health experts from federal agencies, health care and academic organizations, and professional societies, based on their relevant expertise; experience with the

conduct and analysis of clinical trials; experience with the guideline process; record of working effectively in group settings; and established working relationships with colleagues, governmental agencies, and professional societies. *Id.* at ¶ 5-6. This is a far cry from the circumstances in *Georgia v. U.S. DOJ*, where the Court found "nothing in the record [to] suggest[] that DOJ solicited the private entities for assistance." *Georgia v.U.S. DOJ*, 2023 WL 2116375, at *8.

Finally, the Panel is a discrete group of experts solicited for expertise outside the agency's ken. When COVID-19 first appeared in the U.S. in January 2020, it was a severe, life-threatening disease caused by a novel pathogen (SARS-CoV-2), about which little was known. *See* Developing Treatment Guidelines During a Pandemic Health Crisis: Lessons Learned From COVID-19, https: // www. ncbi.nlm.nih.gov/ pmc/ articles/ PMC8252833  (last visited April 13, 2023). Due to the complex nature of the ongoing pandemic and the need for the highest level of expertise in various specialties, NIH solicited experienced public health experts from federal agencies, health care and academic organizations, and professional societies, to form the COVID-19 Treatment Guidelines Panel. *See* Garcia-Malene Decl., ¶ 5. Panel members were and are selected based in part on their relevant expertise and experience with the conduct and analysis of clinical trials. *Id.* at ¶ 6. New members were subsequently added when it became evident that additional areas of clinical expertise were needed, including expertise in clotting disorders, immunomodulatory therapy, and viral resistance. *Id.* at ¶ 7. This is precisely the type of instance anticipated by the consultant corollary doctrine, *i.e.*, "when an agency encounter[ed] problems outside their ken and was required to enlist the help of outside experts." *Georgia v. U.S. DOJ*, 2023 WL 2116375, at *8 (citation omitted).

## CONCLUSION

To the extent the Panel can be fairly considered an "outsider," it is an outsider acting in a governmentally conferred capacity. This makes the Panel in this case distinguishable from the outsiders the Court considered and ruled against in *Georgia v. U.S. DOJ*. Therefore, the consultant corollary doctrine still applies to records shared between the NIH/ HHS and the NIH COVID-19 Treatment Guidelines Panel.

Dated: April 14, 2023

Washington, DC

        Respectfully submitted,

        MATTHEW M. GRAVES, D.C. Bar #481052
        United States Attorney

        BRIAN P. HUDAK
        Chief, Civil Division

By:     /s/
        L'SHAUNTEE J. ROBERTSON, DC Bar No. 980248
        Assistant United States Attorney
        601 D Street, NW
        Washington, DC 20530
        (301) 254-9421
        *Attorneys for the United States of America*