UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAND WHEATLAND,

    Plaintiff,

  v.                                                        Civil Action No. 21-3126 (CJN)

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

    Defendant.

## DEFENDANT'S REPLY TO
## PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEFING

  Defendant, by and through undersigned counsel, hereby submits this Reply to Plaintiff's

Response to Defendant's Supplemental Briefing (ECF No. 22).

## INTRODUCTION

  Pursuant to the Court's March 16, 2023, Minute Order, Defendant filed its Supplemental

Briefing in Support of Its Motion for Summary Judgment (ECF No. 21). There, Defendant

addressed the issue of whether—in light of *Georgia v. Dep't of Justice*, Civ. A. No. 21-3138

(TNM), 2023 WL 2116375 (D.D.C. Feb. 20, 2023)—the consultant corollary doctrine applies to

records shared between the National Institutes of Health ("NIH"), a component of the Department

of Health and Human Services (the "Department"), and the NIH COVID-19 Treatment Guidelines

Panel (the "Panel"). Defendant maintains that the doctrine applies here for three reasons: (1) the

Panel is a neutral party, and is sufficiently disinterested in its communications with NIH and the

Department; (2) unlike in *Georgia*, it was clearly the government in this instance that solicited the

communications from the outside party, here, the Panel, rather than the other way around; and

(3) the Panel is a discrete group of experts solicited for expertise outside the agency's ken.

Defendant's presentation was supported by the Declaration of Gorka Garcia-Malene ("Garcia -Malene Decl."), the Freedom of Information Act ("FOIA") Officer at the Department. In Plaintiff's Response, he attempts to rebut each of the points Defendant raised and to equate this case with that presented in *Georgia*. Plaintiff's attempts fail.

In his attack on Defendant's demonstration of the Panel's neutrality, Plaintiff asserts that it is an "undisputed fact[] that participants to the [Panel] were expressly participating as 'representatives' of stakeholder organizations, which have their own interests in the subject matter of this agency panel's recommendations." Pl. Resp. at 2-3. As explained further below, Plaintiff oversimplifies the holding in *Georgia* and disregards the distinguishable facts of this case.

In his attack on Defendant's demonstration of its solicitation of the Panel, Plaintiff asserts that "it is beyond dispute that . . . [the agency] expressly ask[ed] the professional trade organization lobbyist stakeholder entities to choose the individuals to represent their organization's interests and positions in the agency panel deliberations," rather than selecting the representatives itself. Pl. Resp. at 4. As explained further below, even were Plaintiff's factual representations correct (they are not), they do nothing to disturb Defendant's demonstration that, ultimately, the Panel members were solicited and selected by the agency for the agency's benefit.

Finally, with respect to the Defendant's demonstration that the Panel members are a discrete group of experts, solicited for expertise outside the agency's ken, Plaintiff misses the mark altogether. Rather than demonstrating that the Panel members either were not experts, or that their expertise was not outside the NIH's ken, Plaintiff continued his assertion that the Panel members were representatives of stakeholder, lobbyist industry organizations. Pl. Resp. at 5-6. Because Plaintiff does not address the Panel members' status as experts, or the status of their expertise as "outside the [the agency's] ken," the Court should treat this point as conceded.

**ARGUMENT**

**I.**     **Plaintiff Has Not Overcome Defendant's Demonstration of the Panel's Neutrality.**

In response to Defendant's demonstration of the Panel's neutrality, Plaintiff asserts that it is an "undisputed fact[] that participants to the [Panel] were expressly participating as 'representatives' of stakeholder organizations, which have their own interests in the subject matter of this agency panel's recommendations." Pl. Resp. at 2-3. But Plaintiff points to no "undisputed facts" in the record to support the assertion that any of the Panel members participated in furtherance of their own interests as opposed to those of the agency, nor does he state exactly what specific self-interests any of the Panel members have in the outcome of the Guidelines.

Without these "undisputed facts," Plaintiff cannot rebut Defendant's assertion—as stated by the Department's FOIA Officer—that "[w]hile the panel members come from a diaspora of federal agencies, health care and academic organizations, and professional societies, their sole interest is providing NIH with current scientific and medical advice for the Guidelines to effectively combat COVID-19." Garcia-Malene Decl. ¶ 15. And as further stated in the article "Developing Treatment Guidelines During a Pandemic Health Crisis: Lessons Learned From COVID -19," cited by both Parties, "[t]he Panel operated without yielding to outside political or other pressure, despite the guidelines being developed in a national atmosphere of strong opinions within and outside the government and academia." *Id.* (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8252833 (last visited May 11, 2023)). Nothing in Plaintiff's response rebuts these facts.

Failing to point to actual undisputed facts, Plaintiff argues that *Georgia* "clearly stands for the very opposite [of Defendant's consultant corollary argument]—when a federal agency shares records with interested parties/ stakeholders, then this FOIA exemption *cannot apply as a matter of law*." Pl. Resp. at 3 (citing *Georgia*, 2023 WL 2116375, at *5-6) (emphasis in original). This is

a gross simplification of the Court's holding, and it ignores the distinguishable facts of this case. The *Georgia* Court made no bright-line rule that an outside party must have no interest at all in the outcome of the agency decision. What the Court actually opined on the subject, was that the private parties with whom the agency has consulted must be "sufficiently disinterested to be analogous to government consultants." *Georgia*, 2023 WL 2116375, at *5. In that vein, the government must show that the "consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it," and that its "only obligations are to truth and its sense of what good judgment calls for." *Id.* at *5 (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 11 (2001). "Put differently, a private party acts like a consultant only when it communicates with the agency in service of the United States' interests, not its own." *Id.*

Here, again, Plaintiff fails to recognize that the Panel members—hailing from various federal agencies, health care and academic organizations, and professional societies—had as their sole interest providing NIH with current scientific and medical advice for the Guidelines to effectively combat COVID-19, "without yielding to outside political or other pressure," that came from "within and outside the government and academia." *See* Garcia-Malene Decl. ¶ 15; *see also* Declaration of Daniel J. Stotter ("Stotter Decl"), Ex. A at 7. And Plaintiff makes no attempt to address that the co-chairs of the Panel routinely review financial disclosure statements from all Panel members to ensure members are financially disinterested. Garcia-Malene Decl. ¶¶ 10, 15.

Regardless of the various organizations from which Panel members hail, Defendant has shown that their communications to NIH, in the form of Guideline recommendations, are in service of the agency's interests, not their own. *See generally*, Garcia-Malene Decl. ¶ 11 (describing the Guidelines development, recommendation, vetting, and adoption process). Plaintiff puts forth no

fact-based argument to refute Defendant's showing that the Panel is sufficiently disinterested. For these reasons, Plaintiff's response to Defendant's neutrality demonstration fails.

## II.    Plaintiff Has Not Overcome Defendant's Demonstration that the Agency Solicited the Panel.

Plaintiff baldly and incorrectly asserts that "it is beyond dispute that . . . [the agency] expressly ask[ed] the professional trade organization lobbyist stakeholder entities to choose the individuals to represent their organization's interests and positions in the agency panel deliberations," rather than selecting the representatives itself. Pl. Resp. at 4. In support of this assertion, Plaintiff cites to, then mischaracterizes the article entitled "Developing Treatment Guidelines During a Pandemic Health Crisis: Lessons Learned From COVID -19," cited by both parties. *See* Stotter Decl., Ex. A at 2.

As an initial matter, Plaintiff's characterization of Panel members as representatives of "trade organization lobbyist stakeholder entities" is misleading. The article, attached as Exhibit A to Plaintiff's declaration states, "Professional societies were asked to nominate representatives to the Panel." Stotter Decl., Ex. A at 2. Clearly, this does not support Plaintiff's characterization of the Panel members as representatives of "professional trade organization lobbyist stakeholder entities." Additionally, the article plainly lists all Panel members and their affiliations. *See* Stotter Decl., Ex. A at 9 ("Appendix: NIH Covid-19 Treatment Guidelines Panel Members And Consultants"). They come from universities, federal agencies, hospitals, and professional societies, not "trade organization lobbyist stakeholder entities."

Not only does Plaintiff misunderstand the contents of the article and confuse the nature of the organizations from which Panel members were selected, but he also fails to rebut Defendant's assertion that the Panel was solicited by the Agency, rather than the other way around. This is an important element of the consultant corollary doctrine, taken directly from *Georgia*, 2023 WL

2116375, at *5. As stated under penalty of perjury, Panel members were "solicited" by NIH "from a diaspora of federal agencies, health care and academic organizations, and professional societies." *See* Garcia-Malene Decl. ¶¶ 15-17. Plaintiff's reliance on the fact that "Professional societies were asked to nominate representatives to the Panel" is misplaced. *See* Stotter Decl., Ex. A at 2; *see also* Pl. Resp. at 4. Nothing about professional societies being asked to nominate representatives undercuts that those professional societies, along with other federal agencies, health care organizations, and academic organizations, were solicited by the agency for representatives, and not the other way around.

For these reasons, Plaintiff's response to Defendant's demonstration of agency solicitation fails.

### III.    Plaintiff Has Not Overcome Defendant's Demonstration that the Panel is a Discrete Group of Experts Solicited for Expertise Outside the Agency's Ken.

Finally, Plaintiff ignores that the Panel members are a discrete group of experts, solicited for expertise outside the agency's ken, another important element of the consultant corollary doctrine taken directly from *Georgia*, 2023 WL 2116375, at *5. Citing to his own declaration, Plaintiff asserts that "the panel members themselves openly acknowledge that was not the case, and that in fact, the lobbyist trade organization stakeholders referenced in Plaintiff's prior filings were actually asked to appoint a representative of their entity to participate in the" Panel. Pl. Resp. at 6. Even assuming Plaintiff is correct, he does attempt to address the Panel members' expertise. Instead, he simply continues his assertion that the Panel members were representatives of stakeholder, lobbyist industry organizations, a point that is plainly contradicted by evidence from both parties. *See* Pl. Resp. at 5-6; *see also* Stotter Decl., Ex. A at 9; Garcia-Malene Decl. ¶¶ 5, 7. Because Plaintiff does not address the Panel members' status as experts, or the status of their expertise as "outside the [the agency's] ken," the Court should treat this point as conceded.

In any event, Defendant has adequately demonstrated that Panel members were selected specifically based on the complex nature of an ongoing pandemic—involving a severe, life-threatening disease caused by a novel pathogen (SARS-CoV-2) about which little was known—and the need for the highest level of expertise in various specialties. *See* Garcia-Malene Decl. ¶¶ 5-6; *see also* Decl. Stotter, Ex. A at 1. New members were subsequently added to the Panel when it became evident that additional areas of clinical expertise were needed, including expertise in clotting disorders, immunomodulatory therapy, and viral resistance. Garcia-Malene Decl. ¶ 7. This is precisely the type of instance anticipated by the consultant corollary doctrine, i.e., "when an agency encounter[ed] problems outside their ken and was required to enlist the help of outside experts." *Georgia*, 2023 WL 2116375, at *8 (citation omitted).

\*    \*    \*

**CONCLUSION**

To the extent the Panel can be fairly considered an "outsider," it is an outsider acting in a governmentally conferred capacity. This makes the Panel in this case distinguishable from the outsiders the Court considered and ruled against in *Georgia*. Plaintiff's Response is unpersuasive and does nothing to disturb this straightforward analysis. Accordingly, the consultant corollary doctrine applies to records shared between NIH or the Department and the Panel.

Dated: May 11, 2023
        Washington, DC

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division

                                        By: _____/s/_____
                                            L'SHAUNTEE J. ROBERTSON, D.C. Bar #980248
                                            Assistant United States Attorney
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (301) 254-9421

                                        *Attorneys for the United States of America*