UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAND WHEATLAND,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Defendant. | Civil Action No. 21-3126 (CJN) |

### DEFENDANT'S SUPPLEMENTAL BRIEFING

Defendant, by and through undersigned counsel, hereby submits this Response to Plaintiff's Supplemental Briefing (ECF No. 25), pursuant to the Court's January 14, 2025, Minute Order.

### INTRODUCTION

In May 2024, the D.C. Circuit decided *American Oversight v. Department of Health & Human Services*, 101 F.4th 909 (D.C. Cir. 2024), a case concerning application of the consultant corollary doctrine under Freedom of Information Act ("FOIA") Exemption 5. The Court held in that case that deliberative communications between the Department of Health and Human Services (the "Department") and "members of Congress and their staffs" about proposed health care legislation were not "intra-agency" records covered by Exemption 5's consultant corollary doctrine. That is because members of Congress and their staffs "represented an interest of their own in the matters under discussion." *Id.* at 916. In keeping with the Supreme Court's decision in *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 4 (2001), the Court held that the consultant corollary doctrine does not render a record an "intra-agency" document

for purposes of Exemption 5, if the nonagency author or recipient had "its own stake in the outcome of the agency's decision-making process." 101 F.4th at 909.

## ARGUMENT

The Court's holding in *American Oversight* does not change Defendant's argument here, nor does it bode well for Plaintiff. In both cases, the key remains that the consultant "must not have a stake in the outcome of the agency's process that would render its advice on the subject anything other than disinterested." *Id.* at 916-17. "The inquiry is whether, like an agency employee, the consultant's only 'obligations are to truth and its sense of what good judgment calls for.'" *Id.* at 916-17 (quoting *Klamath Water Users*, 532 U.S. 1, 4). In *American Oversight*, the Court was definitive in its view that Congress had a stake in the outcome of the agency's process, rendering its advice something other than disinterested. "When members of Congress and their staffs engage with executive agencies concerning legislation, they are almost inevitably acting on behalf of interests other than those of the agencies, including those of Congress as an institution and those of their constituents." *Id.* at 920.

Such is not the case here. This case concerns records shared between the National Institutes of Health ("NIH"), a component of the Department, and the NIH COVID-19 Treatment Guidelines Panel (the "Panel"). The Panel did not come to the agency as an outsider with its own special interests. Rather, the Panel members—hailing from various federal agencies, health care and academic organizations, and professional societies—were solicited by NIH for their expertise outside the agency's ken. *See* Def. Supp. Br., ECF No. 24 at 4. And they had as their sole interest providing NIH with current scientific and medical advice for guidelines to effectively combat COVID-19, "without yielding to outside political or other pressure," that came from "within and outside the government and academia." *Id.* Additionally, the co-chairs of the Panel routinely

reviewed financial disclosure statements from all Panel members to ensure members were financially disinterested. *Id.* In short, members of Congress weighing in on potential healthcare reform legislation is not the same as a panel, consisting of experts from various institutions, giving advice to NIH at NIH's request about a severe, life-threatening disease caused by a novel pathogen (SARS-CoV-2) about which little was known. *See Am. Oversight*, 101 F.4th at 920. The latter is interested only in providing the agency with expert advice for effectively combating a pandemic-level disease affecting the public; the former, in the Court's view, is interested only in representing its own constituents. "At least where agencies and Congress engage in back-and-forth negotiations and related communications over the substance of potential legislation, Congress is plainly 'represent[ing] an interest of its own'; otherwise, there would be no cause to negotiate." *Id.* at 921. As demonstrated by the record, no such back-and-forth negotiations occurred here.

Accordingly, even in the wake of *American Oversight*, and for the reasons argued more fully in Defendant's previous filings, the consultant corollary doctrine applies to records shared between NIH and the NIH COVID-19 Treatment Guidelines Panel. The Panel did not have its own stake in the outcome of the agency's decision-making process, and thus cannot be fairly considered an interested party. Inasmuch as Plaintiff persists in mischaracterizing the panel members as "stakeholders," and in continuing to ignore Defendant's clear demonstration of the Panel's purpose, expertise, and neutrality, his supplemental briefing, ECF No. 25, adds little to the discussion.

*     *     *

Dated: February 3, 2025						Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:	__/s/ L'Shauntée J. Robertson_____
	L'SHAUNTEE J. ROBERTSON
	D.C. BAR #980248
	Assistant United States Attorney
	601 D Street, NW
	Washington, DC 20530
	(202) 252-1729
	Lshauntee.robertson@usdoj.gov

	*Attorneys for the United States of America*