UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAND WHEATLAND,

    *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
HEALTH & HUMAN SERVICES,

    *Defendant*.

Civil Action No. 1:21-cv-03126 (CJN)

## MEMORANDUM OPINION

In response to the coronavirus pandemic, the government promulgated the COVID-19 Treatment Guidelines "to provide health care providers, patients, and policy experts the most up to date information concerning the optimal treatment and management of COVID-19." ECF 11-3 at 2. To help it update the Guidelines as its understanding of the virus evolved, the government formed the COVID-19 Treatment Guidelines Panel, a body of "public health experts from federal agencies, health care and academic organizations, and professional societies." *Id.* The government adopted changes to the Guidelines that were supported by a majority of the Panel's members. *Id.* at 2–3. Dr. Alice K. Pau, a government-employed scientist, "serve[d] as the Panel's Executive Secretary" and took minutes of its meetings. *Id.* at 3–4. Although the Panel's conclusions formed the basis of the Guidelines, the Panel's discussions were kept confidential. *Id.* at 4.

Plaintiff Rand Wheatland submitted a FOIA request seeking "all of the transcripts, minutes and recordings of the meetings of the [ ] COVID-19 Treatment Guidelines Panel from 2020 and 2021." ECF 13-2 at 12. In response, the government produced highly redacted copies of Pau's meeting minutes to Wheatland. Wheatland challenged those redactions through an administrative

1

appeal, and when that failed, he brought this suit. Both parties now move for summary judgment. The Court grants the government's motion as to the adequacy of its search, but it grants Wheatland's motion as to the government's redactions.

**Analysis**

A.   **Adequacy of Search**

The adequacy of a search for responsive records "is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Wheatland's request sought only "the transcripts, minutes and recordings" of the Panel's meetings. ECF 13-2 at 12. Upon receiving that narrow request, Pau—the Panel's Executive Secretary, and thus the person best positioned to identify records responsive to Wheatland's request—located the minutes she had taken of the Panel's meetings. ECF 11-3 at 4. She then determined that "there were no other places where Panel meetings minutes would be" and "confirmed that no recordings or transcripts of the Panel's meetings were ever created." *Id.* That suffices to show that the government conducted an adequate search for records; Wheatland's "purely speculative claims about the existence and discoverability of other documents" does not establish otherwise. *See Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

B.   **Exemption 5**

The government bears the burden of establishing that a FOIA exemption shields records from disclosure. *See Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The only pertinent exemption for present purposes is Exemption 5, which covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

As is clear from its text, Exemption 5 has two requirements: The records at issue must be inter-agency or intra-agency, and they must be shielded by one of "the privileges available to Government agencies in civil litigation, such as the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021). The government argues, and Wheatland does not contest, that the second requirement is met. *See* ECF 11 at 11–12; ECF 17 at 3. The Parties' dispute instead centers on Exemption 5's first requirement. Wheatland argues that the minutes are not inter- or intra-agency records because the Panel was composed of outsiders, including representatives from healthcare lobbying organizations. The government has two responses.

1. **Government Authorship**

The government argues that the minutes are intra-agency records because they were created by Dr. Pau, an agency employee, and "reflect her subjective assessment as to which aspects of the Panel's deliberations she considered most important to the Guidelines' formulation." ECF 11-3 at 4. The government bases that argument on four cases in which the court applied Exemption 5 to a government employee's summary of outside materials. *See* ECF 11-1 at 13 (collecting cases). But three of these cases were decided before the Supreme Court clarified that the intra-agency requirement under Exemption 5 has "independent vitality," *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 12 (2001), and so all three dealt solely with the exemption's privilege requirement, *see, e.g.*, *Mapother v. DOJ*, 3 F.3d 1533, 1537–41 (D.C. Cir. 1993). The fourth case is not relevant for a different reason; there, the parties agreed that the documents "qualif[ied] as inter-agency or intra-agency memoranda under Exemption 5," so the court "assume[d] without deciding that they are such memoranda." *Ancient Coin Collectors Guild v.*

*Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011). All four cases therefore have little bearing here.

In any case, the minutes contain much more than Pau's own thoughts about the deliberations. For example, one set of minutes includes a redacted section titled "[o]ther comments from members," ECF 13-2 at 40, while several other sets contain redacted paragraphs apparently summarizing statements given by the Panel's participants, *see, e.g.*, *id.* at 45–46. Those notes are statements made to and received from third parties, not internal deliberative thoughts of a government employee. In the absence of an exception (such as the consultant corollary, discussed below), such "communications between agencies and outside parties are not protected under Exemption 5." *Ctr. for Int'l Env't Law v. Off. of U.S. Trade Rep.*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002); *see also Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 9–10 (2001) ("[N]either the terms of the exemption nor the statutory definitions say anything about communications with outsiders … .").[1]

### 2.  Consultant Corollary

Although the general rule is that Exemption 5 does not shield communications with third parties—because such communications would not be inter- or intra-agency—some courts have recognized an exception for communications "submitted by outside consultants" that were "solicited by the agency." *Ryan v. DOJ*, 617 F.2d 781, 790 (D.C. Cir. 1980). The Supreme Court has considered that so-called consultant corollary only once. *See generally Klamath*, 532 U.S. 1. There, the Court concluded that the consultant corollary cannot apply to communications with a

---

[1] Even assuming that Exemption 5 applies to the parts of the minutes that contain Pau's own thoughts, the government has not yet made any attempt to segregate those from the parts of the minutes containing communications to or from the Panel's third-party participants. *See Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").

third party that sought "benefits inadequate to satisfy everyone." *Id.* at 1068. In other words, *Klamath* foreclosed application of the consultant corollary when the "apparent object of the [third party's] communications" was a decision that favored the third party and that was "necessarily adverse to the interests of competitors." *Id.*

While *Klamath* set out a scenario in which the consultant corollary does not apply, it said little about when the corollary *does* apply. Some courts interpreted *Klamath* as leaving the door open to shielding communications with interested third parties so long as the third party and the government shared a common overriding goal. *See, e.g.*, *Jud. Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 111 (D.D.C. 2018).

The Court of Appeals closed that door firmly in *American Oversight v. Department of Health*, 101 F.4th 909 (D.C. Cir. 2024). That case involved communications between "Trump Administration officials and Republican members of Congress … who shared the 'goal of repealing and replacing' the Affordable Care Act." *Id.* at 913. The Court of Appeals declined to apply the consultant corollary, reasoning that, "in the communications between the agencies and Congress, each side had an independent stake in the potential healthcare reform legislation under discussion." *Id.* at 920. The Court of Appeals went on to state that even if "the agency and non-agency share a common goal or interest at some level of generality," the consultant corollary applies only if "the outsider is *dis*interested"—that is, only if the outsider "comes to the table with no obligation or stake in the outcome of an agency's process other than a duty to provide good advice to the agency, just as the agency's own personnel is expected to." *Id.* at 922 (emphasis in original).

To be sure, parts of *American Oversight* focused on the unique dynamic between the legislative and executive branches. But the decision was not limited to that context. Indeed, the

court provided an example that is particularly relevant here, stating that "a health insurance company could have shared the administration's goal of enacting healthcare reform legislation but could not qualify as an 'intra-agency' consultant given its independent financial interest in the substance of any legislative reform." *Id.*

The Panel—or at least some of its members—stand in the same shoes as *American Oversight*'s hypothetical insurance company. Consider the American Society of Hematology (ASH), one of many private organizations that sent representatives to the Panel. *See* ECF 13-2 at 5–9. The ASH describes itself as "the leader in representing the interests of scientists and clinicians working in the field of hematology, both on Capitol Hill and within federal agencies." *Id.* at 198. It touts that it "plays a vital role in influencing policies that affect researchers, clinicians, and patients by educating lawmakers and government staff on critical issues affecting hematology research and practice." *Id.* In other words, ASH is a lobbyist for a sector of the healthcare industry.[2]

Nothing indicates that ASH—or the numerous other private organizations that sent representatives to the panel, *see* ECF 13-2 at 5–9—acted nefariously. Indeed, the Court assumes that those representatives shared the government's overarching goal of minimizing the harm caused by COVID-19. But the core purpose of ASH and organizations like it is to advocate for the interests of their members in the healthcare industry; they seek to convince legislators and government officials to adopt policies that benefit the organizations' stakeholders and to avoid policies that harm them. They therefore stood to gain or lose from changes to the Guidelines.

---

[2] Take, as a second example, the American College of Clinical Pharmacy, which had two representatives on the Panel and which thereafter lobbied Congress to increase funding for COVID-19 response programs. *See* ECF 13-2 at 6, 207.

Under *American Oversight*, that is fatal to the government's attempt to assert the consultant corollary—and, by extension, its attempt to assert Exemption 5.

## Conclusion

For the foregoing reasons, the Court grants the government's Motion for Summary Judgment as to the adequacy of its search and grants Plaintiff's Motion for Summary Judgment as to the government's redactions. The Court notes, however, that Wheatland does not oppose certain limited redactions to the minutes—particularly, redactions geared toward "protect[ing] personal privacy interests," ECF 13-1 at 10. The Court therefore orders the Parties to meet and confer and to file, on or before May 15, 2025, a joint status report proposing next steps in this litigation.

**IT IS SO ORDERED.**

DATE: April 24, 2025

CARL J. NICHOLS
United States District Judge